IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BENNIE K. ELLISON,

    **Plaintiff,**

v.

CRAIG FINLEY, CHRISTINA
BATSON, KEVIN BYRNE,
INVESTIGATOR MUHAMMAD,
LISA DANIELS, ROB JEFFREY,
SARAH JOHNSON,
CHRISTOPHER G. PERRIN,
and TIMOTHY J. JOYCE,

    **Defendants.**

Case No. 3:22-CV-02037-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

    Plaintiff Bennie Ellison, a former Illinois prisoner, sues three members of the Illinois Prisoner Review Board (Defendants Craig Finley,[1] Kevin Byrne,[2] and Lisa Daniels), one records supervisor at Pinckneyville Correctional Center (Defendant Christina Batson), the Director of the Illinois Department of Corrections (Defendant Rob Jeffrey),[3] chairperson of the Administrative Review Board (Defendant Sarah Johnson), and two state-court judges who presided over Ellison's related criminal and civil

---

[1] The Court suspects Ellison means to name former chairman of the Prisoner Review Board Craig Findley in his Complaint. But the Court will continue to use the misspelling "Finley," because that is how Defendant's name appears on the docket and in the motion to dismiss filed on his behalf.

[2] It appears from the Complaint that Ellison lumps together his claims against Kevin Byrne and Investigator Muhammad, who also apparently relates to the Prisoner Review Board.

[3] The Court believes Ellison means to name Rob Jeffreys, the Director of the Illinois Department of Corrections. But the Court will continue to use the misspelling Jeffrey, because that is how Defendant's name appears on the docket.

proceedings (Defendants Christopher Perrin and Timothy Joyce) under 42 U.S.C. § 1983.[4] (Doc. 1). Ellison alleges violations of his constitutional rights to due process and equal protection, deliberate indifference to his right to be free from unreasonable restraint and imprisonment and to his serious medical needs, abusive process of parole hearings, deprivation of his personal property, and other instances of unlawful abuses of power and conspiracy. (*Id.*). Ellison asserts that his release date was miscalculated, and he was imprisoned unlawfully beyond his appropriate release date. (*Id.*). As a result of the various alleged deprivations, Ellison claims to have suffered mental, physical, and emotional distress and seeks compensatory and punitive damages in the amount of three million dollars. (*Id.*). Ellison's Complaint contains seven counts against nine defendants. (*Id.*). All counts in the Complaint have been crafted with identical language. (*Id.*).

The Prisoner Review Board ("PRB") Defendants Finley, Byrne, and Daniels, along with Pinckneyville records supervisor Batson, are the only defendants for which summons has issued and for whom service has been effected in this action. (*See* Docs. 13, 14). The PRB Defendants and Batson collectively filed a Motion to Dismiss claiming protection from state law claims under sovereign immunity and arguing that Ellison has failed to state a claim upon which relief could be granted. (Docs. 25, 26). Counts I, II, III, and IV proceed against Finley, Batson, Byrne, and Daniels respectively. Ellison responded in opposition to this motion. (Doc. 27).

---

[4] Because Ellison is a former prisoner who paid the total filing fee, the Complaint was not subject to a merit screening pursuant to 28 U.S.C. §§ 1915 or 1915A. (*See* Doc. 5). But under 28 U.S.C. § 1915(e), regardless of fee payment status, a court "shall dismiss the case at any time if the court determines that…the action or appeal is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

**LEGAL STANDARD**

A court may dismiss a complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a motion to dismiss under Rule 12(b)(6), a court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). A trial court is also obligated to liberally construe a *pro se* plaintiff's pleadings. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017); *see also United States v. Hassebrock*, 21 F.4th 494, 498 (7th Cir. 2021) (*pro se* litigant's submissions are to be construed generously).

**DISCUSSION**

**I.    Motion to Dismiss (Doc. 25)**

    **a.  State-Law Sovereign Immunity**

The PRB Defendants and Batson argue that state-law sovereign immunity bars Ellison's state-law claims against them. In the identical counts against each defendant, Ellison alleges that defendants "breach[ed] duty owed to Plaintiff as for correcting" (his sentence calculation) and violated "Article 13 section 3 and Article 1 section 2 of the Illinois Constitution." (Doc. 1, pp. 7-13). While these allegations also likely fail to state a cognizable claim, the PRB Defendants and Batson are immune from suit for these state-

law claims.

In Illinois, the state is protected against civil suits in federal court via the Eleventh Amendment and the Illinois State Lawsuit Immunity Act providing that, "the State of Illinois shall not be made a defendant or party in any court" with specific exceptions not relevant here. 745 Ill. Comp. Stat. 5/1; *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016). The State Lawsuit Immunity Act vests jurisdiction over state tort claims against the state in the Illinois Court of Claims. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). Whether an action is actually against the State depends on the issues involved and the relief sought rather than on the formal identification of the parties. *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990). Of course, sovereign immunity affords no protection when the State's agent allegedly acted in violation of statutory or constitutional law or in excess of his authority. *Id.* Further, "individual state officials may be sued personally for federal constitutional violations committed in their official capacities, but that principle does not extend to claims that state officials violated state law in carrying out their official responsibilities." *Lukaszczyk v. Cook County*, 47 F.4th 587, 604 (7th Cir. 2022) (quoting *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 121 (1984)) (internal quotation marks omitted).

Here, Ellison alleges that the PRB Defendants violated his rights during their official duties on the PRB while evaluating his eligibility and imposing conditions for release. (Doc. 1, pp. 2-3). He alleges that Finley failed "to oversee nor review[] [his] complaints of deprivation of fair process of hearings and failure to provide accurate discharge calculation date." (*Id.* at p. 2). Similarly, against Byrne and Daniels, Ellison

alleges that they declined his request to appoint an attorney, refused to postpone the hearing, failed to allow for a proper investigation of the charges, and refused to review certain evidence. (*Id.* at p. 3). For Batson, Ellison likewise alleges that she violated his rights during her official duty of calculating his release date. Specifically, he asserts that she incorrectly calculated his release date and engaged in "fraudulent concealment" of facts that would lead to the correct calculation. (*Id.*). This conduct, in calculating a release date and declining certain requests, arises strictly from their roles as state employees, and as such, to the extent that Ellison alleges state-law violations against the PRB Defendants and Batson, those claims are barred by state-law sovereign immunity.

The PRB Defendants and Batson do not make arguments related to sovereign immunity as to the federal claims under the Eleventh Amendment, but to be clear, Ellison cannot sue any of these defendants in their "official capacity." The Eleventh Amendment prohibits suits against state officials in their official capacities because such a suit is not a suit against the official but rather the state itself. *Jones v. Cummings*, 998 F.3d 782, 786 (7th Cir. 2021). But the Eleventh Amendment does not shield state officials from claims that they deprived someone of a federal right under color of state law, and damages awards against individual defendants in federal court are a permissible remedy in such situations. *Isabell v. Trustees of Indiana Univ.*, 432 F. Supp. 3d 786, 793-94 (N.D. Ind. 2020). Moreover, the state officials are not immune from personal liability under § 1983 solely because of the official nature of their acts. *Id.* Ellison does not clearly label his claims as official or individual capacity claims, however, construing his *pro se* Complaint generously, he does not allege any official policy or custom violated his constitutional

rights and he seeks punitive damages, which both suggest an intent to sue the state officials in their individual capacities. *See Wynn*, 251 F.3d at 592.

### b. Absolute Immunity – PRB Defendants

Even if Ellison intends to proceed against the PRB Defendants individually—assuming each played a personal role in parole decisions related to Ellison—they enjoy another type of immunity. The Seventh Circuit has "accorded prisoner review board members absolute immunity for their activities that are analogous to those performed by judges." *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443-444 (7th Cir. 1996). This includes decisions to grant, deny, or revoke parole. *Id.* at 1444 (quoting *Walrath v. United States*, 35 F.3d 277, 281 (7th Cir. 1994)); *see also Wofford v. Walker*, 464 Fed. App'x 533, 535 (7th Cir. 2012) (holding that the revocation of mandatory supervised release was a quasi-judicial act, and the chairman of the PRB was, thus, subject to absolute immunity under § 1983). In addition to the actual parole decision, "activities that are part and parcel of the decision process justify absolute immunity," including failures to follow procedural due process during revocation hearings. *Wilson*, 86 F.3d at 1444 (internal quotation marks omitted); *Brown v. Jeffreys*, No. 19-cv-001032, 2020 WL 774162, at *2 (S.D. Ill. Feb. 18, 2020).

Here, Ellison's allegations as to the PRB Defendants fall within the class of conduct for which absolute immunity applies. While Ellison makes very limited factual allegations, even his conclusory allegations make clear that challenged conduct is subject to absolute immunity. He urges that Finley failed to oversee or review his complaints of deprivation of a fair process, failed to provide an accurately calculated discharge date, failed to investigate violations of the sentencing guidelines by the sentencing court, failed

to notify the court of inaccurate sentencing guidelines, and acted in concert with the other defendants to create unreasonable imprisonment. Ellison claims Byrne declined his request for an appointed attorney, declined his request to postpone the hearing for medical treatment, refused to postpone the hearing for proper investigation, and deprived him of a proper investigation. As to Daniels, Ellison avers that she failed to accept his request for postponement, refused to review specific documents and evidence at the hearing, and failed to properly calculate his discharge date or revoke any time in her written order. Of course, these allegations are problematic because they are conclusory. But even if Ellison alleged more supporting facts, these allegations directly implicate the PRB members' decision to revoke Ellison's mandatory supervised release, along with activities that are part and parcel in that decision-making process, all of which justify absolute immunity.

Because the conduct alleged implicates the adjudicative functions that the PRB Defendants performed, Ellison's claims against them are precluded by absolute immunity for their quasi-judicial acts. The PRB Defendants (Craig Finley, Kevin Byrne, and Lisa Daniels) are dismissed with prejudice.[5]

---

[5] Typically, a district court should allow a *pro se* litigant an opportunity to replead before dismissing claims with prejudice. *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Id*. Here, there is no basis to conclude that, if given another opportunity, Ellison could state a viable federal claim against the PRB Defendants based on the allegations in the Complaint, and because of the operative immunity, amendment would be futile.

### c. Failure to State a Claim

Defendants collectively argue that Ellison's Complaint contains no specific factual allegations, but instead relies on conclusory statements alleging general "violations." For example, in each count of the Complaint—which are identical for each defendant—Ellison simply lists general "violations" of eleven separate constitutional rights or statutes. Aside from the barred state-law claims, Ellison alleges that each defendant violated:

> c. 18 U.S.C. 242 – Deprivation of Rights Under Color of Law.
> d. 28 U.S.C. 1001 – Fraudulent Concealment.
> e. Fourth, Eighth and Fourteenth Amendment of the United States Constitution.
> f. 18 U.S.C. 1201(a) – Kidnapping, Unreasonable Restraint and Imprisonment.
> g. 18 U.S.C. 241 – Conspiracy.
> h. 8 U.S.C. 1324(c) – Fraud.
> i. 18 U.S.C. 2071 – Willfully and Unlawfully Concealment.
> j. 18 U.S.C. 201 – Public Corruption.
> k. 18 U.S.C. 249 – Hate Crime Acts.

(Doc. 1, pp. 7-13). According to Defendants, these so-called violations are also not related to any actual or specific conduct described elsewhere in the Complaint. As such, the PRB Defendants and Batson argue that the claims should be dismissed for failure to state a claim.

As described above, the allegations against the PRB Defendants are conclusory and, in and of themselves, likely fail to state a claim. But the Court dismissed those defendants under absolute immunity so the Court will only evaluate the sufficiency of the claims against Batson—the remaining defendant with respect to the pending motion to dismiss. To start, many of the federal statutes listed in each count of the Complaint are criminal statutes enforceable by the Department of Justice through criminal charges.

These statutes offer no private right of enforcement, and victims of related misconduct cannot sue civilly under these statutes. To the extent Ellison lists these statutes attempting to highlight the unlawful conduct that Batson engaged in, he must be more specific. Simply alleging that each defendant violated these statutes or constitutional provisions does nothing to state a claim for relief against them.

Specific to Batson, Ellison states that she engaged in recordkeeping of his sentencing, mandatory supervised release, violations, and calculations of the circuit courts and the PRB. He further alleges that she calculated an inaccurate discharge date of December 29, 2020, fraudulently concealed facts related to his discharge date, and abused authority of court orders. These allegations are also conclusory and provide no details as to how Batson violated his rights. As such, Ellison fails to plead enough facts, specific to Batson, to state a claim for relief plausible on its face.

As the Court understands the Complaint, Ellison alleges that the defendants, including Batson, unlawfully allowed him to remain incarcerated beyond his appropriate release date. "Incarceration beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference." *Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016).[6] But "[d]eliberate indifference requires more than negligence, rather the defendant must meet essentially a criminal recklessness standard, that is, ignoring a known risk." *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir.

---

[6] Worth noting, the Seventh Circuit's dicta in *Wells v. Caudill* calls into question the practice of using an error of state law in sentence miscalculation as the basis of an award of damages under the Eighth Amendment. 967 F.3d 598, 601-03 (7th Cir. 2020).

2014) (internal quotation marks omitted). "A state officer is deliberately indifferent when he does nothing, or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs*, 829 F.3d at 903 (internal citations omitted).

Ellison failed to allege that Batson acted with deliberate indifference in holding him beyond the term of his incarceration or deliberately ignored his claims of her miscalculation. First, Ellison fails to allege facts that Batson knew of his protests concerning the miscalculation of his release date. Moreover, the facts in the section of the Complaint entitled "Plaintiff's Custody Dates, Calculations and Legal Arguments" do not create an inference that Batson miscalculated Ellison's release date. Next, there are no facts that Ellison obtained any decision from a state judge specifying the appropriate end of his sentence. The Complaint also includes no facts that Batson knew of or ignored any such order.

Because the Complaint is devoid of allegations that create a plausible claim for relief, the claims against Batson must be dismissed. The Court will allow Ellison to amend his complaint—as to his federal claims against Batson—to add facts that state a plausible claim for relief (if he can do so).

## II.  Other Issues

Ellison's complaint raises claims against five additional defendants who were never served. Two defendants, Christopher Perrin (Count VI) and Timothy Joyce (Count VII), are state-court judges. The other two defendants, Rob Jeffrey (Count V) and Sarah Johnson (Count V), work within the Illinois Department of Corrections. And the final

defendant, Investigator Muhammad (Count III), is listed only in tandem with Defendant Kevin Byrne with identical allegations as to both. The complaint appears to raise claims of deliberate indifference to serious medical needs by Jeffrey and Johnson, although the allegations are conclusory, and their unlawful conduct is not listed. The Court addresses issues unique to each of these defendants below.

### a. Judicial Immunity

According to the Complaint, Judge Perrin presided over Ellison's state court action involving his request for immediate release in 2019. Ellison alleges that Judge Perrin denied his emergency injunction, refused to hold an emergency hearing, entered adverse orders, and denied (or ignored) his various motions to reconsider. Separately, Judge Joyce presided over one of Ellison's criminal cases that led to his most recent incarceration. Ellison alleges that Judge Joyce entered an erroneous and unreasonable sentence against him, ignored his filings seeking the correction of his sentence, denied his motions to reconsider and for habeas corpus relief, refused to hear several of his claims, and refused to correct his sentence. Both Judge Perrin and Judge Joyce are afforded judicial immunity, and as such, are dismissed from this action.

The doctrine of judicial immunity affords state judges absolute immunity for past judicial acts regarding matters within their jurisdiction. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978); *see also Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011). Instead, a judge is only subject to liability when he or she has acted in the "clear absence of all jurisdiction." *Id.*

Of course, to enjoy immunity, the judge must have acted as a judge, rather than an ombudsman or administrative official. *Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995).

All the acts alleged—denying motions, denying injunctive relief, entering adverse orders, and criminal sentencing—are clearly judicial acts involving discretion and judgment, which are subject to judicial immunity. *See John v. Barron*, 897 F.2d 1387, 1392 (7th Cir. 1990) ("Unlike a judge who fires a court employee, a judge who assigns a case, considers pretrial matters, and renders a decision acts well within his or her judicial capacity." (internal citation omitted)). There is also no reason to suspect that either judge acted in clear absence of all jurisdiction with respect to each of Ellison's cases over which they presided. As such, Judge Perrin and Judge Joyce are immune from this suit. If they committed any errors, Ellison could have and should have sought correction through appeal, but this lawsuit is not the proper channel to remedy such alleged errors. The Court dismisses with prejudice[7] the claims against Defendants Christopher Perrin and Timothy Joyce.

### b. Failure to Serve Remaining Defendants and to Prosecute Case

The remaining defendants, Rob Jeffrey, Sarah Johnson, and Investigator Muhammad, have yet to be served. Pursuant to Federal Rule of Civil Procedure 4(m),

---

[7] Typically, a district court should allow a *pro se* litigant an opportunity to replead before dismissing claims with prejudice. *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Id*. Here, there is no basis to conclude that, if given another opportunity, Ellison could state a viable federal claim against Judges Perrin and Joyce based on the allegations already raised. Moreover, amendment would be futile given the operative judicial immunity.

"[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). A plaintiff can potentially avoid dismissal if he or she shows good cause for the failure, in which case, a court must extend the time for service. Moreover, "a court has inherent authority to dismiss a case *sua sponte*," that is, on its own, "for a failure to prosecute." *O'Rourke Bros. Inc. v. Nesbitt Burns, Inc.*, 201 F.3d 948, 952 (7th Cir. 2000). Given the considerable time that has passed without service, the Court doubts that Ellison can demonstrate good cause, but Ellison is ordered to show cause in writing as to why his claims against remaining defendants, Rob Jeffrey, Sarah Johnson, and Investigator Muhammad, should not be dismissed under Rule 4(m) for lack of service or Rule 41(b) for failure to prosecute.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss filed by Defendants Craig Finley, Christina Batson, Kevin Byre, and Lisa Daniels (Doc. 25) is **GRANTED**. The claims against Finley, Byrne, and Daniels in Counts I, III, and IV are **DISMISSED with prejudice**. In Count II, the state law claims against Batson are **DISMISSED with prejudice** and barred under Sovereign Immunity, and the remaining claims are **DISMISSED** for failure to state a claim. Ellison is **GRANTED** leave to amend his complaint, as to the federal claims against Batson, on or before **April 19, 2024.**

Defendants Christopher Perrin and Timothy Joyce enjoy absolute judicial immunity, and the claims against them are **DISMISSED with prejudice**. Further, Ellison

is **ORDERED to SHOW CAUSE** in writing as to why his claims against remaining defendants, Rob Jeffrey, Sarah Johnson, and Investigator Muhammad, should not be dismissed on or before **April 19, 2024.** Ellison is **WARNED** that failure to do so will result in the dismissal of these defendants from this action. Lastly, Ellison's Motion for Status (Doc. 33) is **DENIED as moot**.

    IT IS SO ORDERED.

    DATED:  March 20, 2024

                                                 **NANCY J. ROSENSTENGEL**
                                                 **Chief U.S. District Judge**